## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **RODNEY E. WOODY,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **CV-08-BE-2233-M** |
| | ] | |
| **PETE GEREN, Secretary of the Army,** | ] | |
| | ] | |
| **Defendant.** | ] | |
| | ] | |

### MEMORANDUM OPINION

This matter comes before the court on Defendant's "Motion to Dismiss" (doc. 22). The parties have fully briefed the motion. The court has considered the submissions and the applicable law. Defendant, Secretary of the Army, argues that this employment discrimination case should be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. Specifically, the Secretary asserts Plaintiff's claims under 42 U.S.C. § 1981, 42 U.S.C. § 1983, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, are barred by the doctrine of intra-military immunity. For the reasons stated below, the court agrees and finds that the Defendant's motion to dismiss is due to be GRANTED.

### I.  FACTUAL BACKGROUND

Plaintiff Rodney E. Woody worked as a "Dual Status Military Technician" for the Alabama Army National Guard from 1974 to 2005.[1]  Prior to his termination in 2005, he was

---

[1] In his response in opposition to Defendant's motion to dismiss, Plaintiff states that he "adopts the statement of facts as set forth in [D]efendant's motion to dismiss." (Doc. 28, at 1.) Because the Statement of Facts in Defendant's motion contains several key facts omitted from the amended complaint (doc. 7), and Plaintiff does not dispute or contest these facts, the court

classified as an Automotive Worker with a military rank of "Sergeant First Class."  At that time,

his wage grade was nine (WG-09) and his pay grade was E-7.  As a matter of federal law, and as

a condition of his employment, Woody was required to serve as a member of the National Guard;

to hold the appropriate military grade for his position; and to wear the uniform appropriate for his

grade and component of the armed forces while performing duties as a technician.  (Mot. to

Dismiss, Doc. 23, at 2-3 (citing 32 U.S.C. § 709(b)).

   In January 2005, Woody applied for an Automotive Worker Supervisor position with the

Alabama Army National Guard.  The vacancy announcement stated that the minimum military

grade required to apply for the position was Master Sergeant, pay grade E-8.  (Mot. to Dismiss,

Doc. 23, at 3 (citation omitted)).  Woody interviewed but was not selected for the position.  Of

the three applicants interviewed, Woody received the lowest interview score.  The white

candidate selected for the position received the highest interview score and held the required E-8

military grade.  Woody, however, "could not have been selected due to a prohibition against

grade inversion, as it would have resulted in him, as an E-7, supervising an E-8."  (*Id.*).

   In February 2005, Woody was also not selected for retention by the Qualitative Retention

Board,[2] which ultimately resulted in the loss of both his military and technician positions.

Plaintiff's amended complaint alleges that his "termination" was "due to discrimination on the

basis of race and/or due to retaliation for opposing and/or reporting race discrimination."  (Pl's

_____

will draw primarily from the facts as articulated in Defendant's motion.

   [2] Defendant's Statement of Facts explains: "The National Guard Qualitative Retention
Board provides a biennial review of the military personnel records of all Army National Guard
soldiers with 20 or more years of service to determine their retention potential and suitability for
reenlistment."  (Mot. to Dismiss, Doc. 23, at 3-4 (citation omitted)).

Am. Complt., Doc. 7, at ¶ 13).  Plaintiff explains that he had filed "multiple Equal Employment Opportunity Complaints" during the course of his employment.  (*Id.* at ¶ 11).

Plaintiff's amended complaint also alleges that he "was subjected to a racially hostile work environment."  (*Id.* at ¶ 8).  Without identifying specific incidents, Plaintiff states that the hostile environment "included being subjected to severe and pervasive racially charged comments because of his race, black."  Further, Plaintiff alleges that "during the course of his employment," his employer did not provide him "with the same or substantially similar opportunities for training as his white counter-parts," without providing examples (*Id.* at ¶ 10).[3]

## II.  PLAINTIFF'S CLAIMS

In this lawsuit, Woody alleges claims of disparate treatment, retaliation, and hostile work environment under 42 U.S.C. § 1981, 42 U.S.C. § 1983, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, because of his race, African American.  Plaintiff arranges these claims into six counts:

1.　　Count One – Disparate Treatment (Section 1981/Section 1983);
2.　　Count Two – Retaliation (Section 1981/Section 1983);
3.　　Count Three – Hostile Work Environment (Section 1981/Section 1983);
4.　　Count Four – Disparate Treatment (Title VII);
5.　　Count Five – Retaliation (Title VII); and
6.　　Count Six – Hostile Work Environment (Title VII).

Plaintiff brings these claims against his employer, the Secretary of the Army, and alleges that they arose in the course of his employment with the Alabama Army National Guard.

The court takes judicial notice that this case is not the first time Woody has filed such claims in federal court, specifically in the Northern District of Alabama.  Judge Blackburn's

---

[3] Defendant's Statement of Facts in its Motion to Dismiss fails to acknowledge Plaintiff's alleged facts relating to his hostile work environment claims, or the failure to train.

September 29, 2000 Memorandum Opinion details the progeny of "*Woody I*," "*Woody II*," and the case filed in her court, which we may now call "*Woody III.*"  *See Woody v. West*, Case No. CV-97-B-1291-S, Doc. 33 (N.D. Ala. Sept. 29, 2000).  Each case alleged similar facts and involved virtually identical race-based discrimination claims under Section 1981, Section 1983, and Title VII against the Secretary of the Army, the National Guard Bureau, and the Adjutant General of the Alabama National Guard.  *Woody I* and *Woody II* were dismissed for various reasons, including the Plaintiff's failure to exhaust administrative remedies on certain claims.

Judge Blackburn's 29-page opinion in *Woody III* assessed claim and issue preclusion, as those doctrines impacted that case.  The *Woody III* opinion also analyzed in depth the applicability of the intra-military immunity doctrine as it affected Woody's claims relating to denial of a promotion to a supervisory position and allegations of racial harassment.[4]  As to both claims, Judge Blackburn concluded that Plaintiff's dual-status technician position was military in nature and the activities alleged were clearly incident to his military service, thus rendering them nonjusticiable military matters barred by the doctrine of intra-military immunity.  *Woody v. West*, Case No. CV-97-B-1291-S, Doc. 33, at 25, 27 (N.D. Ala. Sept. 29, 2000).

In this case, Woody asserts his claims against only the Secretary of the Army.[5]  In his

---

[4] In *Woody III*, Woody's alleged discriminatory injury as to non-promotion stemmed from the denial of a Construction Equipment Repair Supervisor position, which was awarded to a white male.  Notably, the position required a "skill level of 40," and at the time, Woody had a skill level of only 30.  Woody's harassment claim contended that his supervisor made "numerous racial remarks directed toward [him]" and "encouraged co-workers to write letters to get [him] dismissed," and "failed to protect [him] from physical harm." Further, Woody alleged that a fellow foreman used the term "nigger" in his presence, and that in general, he was "more severely disciplined than similarly situated white employees."  CV-97-B-1291-S, Doc. 33, at 25-26.

[5] Plaintiff originally named the Alabama National Guard as a second Defendant, but Plaintiff deleted that party from his amended complaint (doc. 7), leaving only the Secretary.

motion to dismiss, the Secretary does not raise failure to state a claim, claim or issue preclusion, or any argument concerning failure to exhaust administrative remedies.  Instead, the Secretary raises the doctrine of intra-military immunity as a bar to all claims, arguing that this case stands to be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.  In addition, the Secretary presents several alternative arguments for dismissal of the Section 1981 and 1983 claims based on lack of subject matter jurisdiction, which Plaintiff does not challenge, and the court thus deems those claims waived by the Plaintiff.

Therefore, the only disputed issue before the court relevant to the motion to dismiss is the applicability of the intra-military immunity doctrine, otherwise known as the *Feres* doctrine.  *See Feres v. United States*, 340 U.S. 135, 146 (1950).

### III.  STANDARD OF REVIEW

A Rule 12(b)(1) motion to dismiss challenges the district court's subject matter jurisdiction and can take one of two forms—a facial or a factual attack.  *Stalley v. Orlando Ref'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).  "A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [the] complaint are taken as true for the purposes of the motion."  *McElmurray v. Consol. Gov't of Augusta-Richmond County*, 501 F.3d 1244, 1251 (11th Cir. 2007).  "By contrast, a factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony."  *Id.*  Under a factual attack, such as here, the court "is not limited to an inquiry into undisputed facts; it may hear conflicting evidence and decide for itself the factual issues that determine jurisdiction."  *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991).

## IV.  DISCUSSION

**A.**     *The* **Feres** *Doctrine*

The Secretary argues that Plaintiff's claims stand to be dismissed as a matter of law

according to the doctrine of intra-military immunity, also known as the *Feres* doctrine.

Generally, this longstanding doctrine provides that courts may not entertain actions by service

members against the military for wrongs arising out of, or in the course of, their military service.

*See Feres v. United States*, 340 U.S. 135, 146 (1950) ("[T]he Government is not liable under the

Federal Torts Claims Act for injuries to servicemen where the injuries arise out of or are in the

course of activity incident to service.").  Although the *Feres* doctrine first developed in the

context of claims arising under the Federal Tort Claims Act, the Supreme Court, through a series

of later cases, expanded the doctrine to include *all* suits for damages.  *See Chappell v. Wallace*,

462 U.S. 296, 305 (1983) (applying doctrine to suits seeking damages for alleged constitutional

violations); *United States v. Shearer*, 473 U.S. 52, 59 (1985) (non-constitutional violations);

*United States v. Stanley*, 483 U.S. 669, 684 (1987) (*Bivens* claims).  The Eleventh Circuit Court

of Appeals has recognized that the "impetus" behind this expansion

> was an acknowledgment of the "special nature of military life [and] the need for
> unhesitating and decisive action by military officers and equally disciplined
> responses by enlisted personnel [that] would be undermined by a judicially
> created remedy exposing officers to personal liability at the hands of those they
> are charged to command."

*Spiegner v. Alexander*, 248 F.3d 1292, 1295 (11th Cir. 2001) (quoting *Chappell*, 462 U.S. at 304).

After the Supreme Court's latest expansion of the *Feres* doctine in *Stanley*, most circuit

courts extended application of the doctrine to Section 1983 cases.  *See, e.g.*, *Bowen v. Oistead,*

125 F.3d 800, 803 n.2 (9th Cir. 1997); *Wright v. Park,* 5 F.3d 586, 591 (1st Cir. 1993); *Watson v.*

6

*Arkansas Nat'l Guard*, 886 F.2d 1004, 1007 (8th Cir.1989); *Crawford v. Texas Army Nat'l Guard*, 794 F.2d 1034 (5th Cir. 1986); *Martelon v. Temple*, 747 F.2d 1348, 1350-51 (10th Cir. 1984), *cert. denied*, 471 U.S. 1135 (1985).  In *Speigner*, the Eleventh Circuit directly addressed the *Feres* doctrine as it applied to Section 1983 denial of due process, Section 1981 race discrimination claims, and Section 1985 race-based conspiracy.  The court reviewed and cited with approval the line of cases from other circuits that had expanded the *Feres* doctrine to Section 1983 cases.  *See Speigner*, 248 F.3d at 1295.  The Court ultimately stated: "we now hold that cases brought by enlisted personnel against the military for injuries incident to service are nonjusticiable, whether the claims request monetary damages or injunctive relief."  *Id.* at 1298.

**B.    *Eleventh Circuit "Incident to Service" Test***

The Eleventh Circuit applies a three-factor test to determine whether a plaintiff's alleged injuries "arise out of or are in the course of activity incident to military service" as set forth in *Feres* and its progeny: (1) the duty status of the service member; (2) the place where the injury occurred; and (3) the activity the serviceman was engaged in at the time of the injury.  *Speigner*, 248 F.3d at 1298; *see also Whitley v. United States*, 170 F.3d 1061, 1070 (11th Cir. 1999); *Kitowski v. United States*, 931 F.2d 1526, 1528-29 (11th Cir. 1991).  "After evaluating the relative weight of these factors, a court should determine whether an activity is incident to service based on the totality of the circumstances."  *Pierce v. United States*, 813 F.2d 349, 353 (11th Cir. 1987).  The rationale of this test is to separate cases that may interfere with military discipline and command decisions from those that do not.  *See Whitley*, 170 F.3d at 1069.

Though neither Plaintiff nor Defendant in their briefs acknowledged or applied the Eleventh Circuit's three-factor "incident-to-service" test, the court finds it to be the appropriate

7

test for determining the applicability of intra-military immunity to Plaintiff's claims, as have

other district courts in similar circumstances.  *See, e.g., Paulk v. Harvey*, 2006 WL 2786942

(M.D. Ala. 2007) (applying three-factor test to military technician's Title VII age discrimination

claims against the Secretary of the Army); *Woody v. West*, Case No. CV-97-B-1291-S, Doc. 33

(N.D. Ala. Sept. 29, 2000) (race discrimination).

      1.     <u>Non-promotion/Non-retention Claims</u>

      Most relevant to this case, Judge Blackburn in *Woody III* applied the Eleventh Circuit's

three-factor test to similar race-based promotion denial and racial harassment claims involving

the same parties as in this case.  *See Woody v. West*, Case No. CV-97-B-1291-S, Doc. 33 (N.D.

Ala. Sept. 29, 2000) (applying test as articulated in *Kitowski*).  In analyzing Woody's non-

promotion claim, the court determined the record was "clear" that any injury arising from the

denial of the supervisor position "occurred (1) when all the involved parties were on military

duty, (2) at military facilities, (3) while making personnel decisions regarding military

promotions."  *Id.* at 25.  As to the harassment claim, the court compared the facts to two similar

cases from other circuits that held dual status military technicians' claims of harassment arose

"incident to service."  *Id.* at 26 (citing *Stauber v. Cline,* 837 F.2d 395 (9th Cir. 1987); *NeSmith v.

Fulton*, 615 F.2d 196 (5th Cir. 1980)).  The court found significant the shared facts that "the

technicians were under the direct command of active-duty military officers, shared the same

direct military relationships whether on military or civilian status, and were subject to military

discipline."  *Id.*  For these reasons, the court found the discriminatory activities Woody alleged

were "***clearly incident*** to military service" (emphasis added), and granted summary judgment in

favor of the Army on Woody's Section 1981 promotion and harassment claims, deeming them

"nonjusticiable and not reviewable by this court."  *Id* at 25, 27.

Likewise, the court concludes here that Plaintiff's claims relating to the denial of his promotion to Automotive Worker Supervisor, as well as his non-selection for retention by the National Guard Qualitative Retention Board, are nonjusticiable under the *Feres* doctrine when evaluated under the Eleventh Circuit's three-factor test.  At the time of both of these adverse employment actions, Woody was actively employed with the Alabama National Guard and held a military rank and grade of Sergeant First Class, E-7.  The supervisory position he applied for required a minimum military rank and grade of Master Sergeant, E-8.  Woody's selection for the position would have resulted in a prohibited grade inversion.  Further, at the time he was non-selected for retention by the Army National guard upon his biennial review, the court finds significant a) Woody's active military status, and b) the board's required review of his military personnel records to determine his potential and suitability for military re-enlistment.  These factors demonstrate that his claims of non-promotion are clearly "incident to" his service in the Alabama Army National Guard.  Therefore, his claims arising from non-promotion and from non-retention are barred from this court's review by the *Feres* doctrine.

Other courts have reached the same conclusion under the Eleventh Circuit's three-factor test in similar circumstances.  For example, *Paulk* involved similar circumstances involving the non-promotion of a dual status military technician with the Alabama Army National Guard.  The court concluded under the Eleventh Circuit's three-factor test that the defendant's decision not to promote plaintiff "was clearly 'incident to service' in the Alabama Army National Guard, and consequently, barred from review by the *Feres* doctrine."  *Paulk*, 2006 WL 2786942, at *3.

Similarly, in *Speigner*, the Eleventh Circuit evaluated a claim of racial discrimination by

9

a former Alabama National Guard officer that involved his non-retention pursuant to annual review by a selective retention board.  Emphasizing that Speigner was on active duty with the Alabama Guard, and that the injury (termination of his position) occurred as a consequence of the retention board's formal review of the plaintiff, the Eleventh Circuit affirmed the district court that the decision of whether to retain the officer was nonjusticiable under the three-factor "incident to service" test.  In so holding, the Court stated:

> Because there are a limited number of positions available at the higher levels of command, it is imperative to the military that only those officers determined to be competent to serve are retained. To dictate to the military which officers should be considered competent would be to interfere in just the way that *Feres* and its progeny preclude.

*Speigner*, 248 F.3d at 1298.  Further, the Court cited with approval a statement by the Ninth Circuit that, "Military promotion is one of the most obvious examples of a personnel decision that is integrally related to the military's structure."  *Id.* (quoting *Mier v. Owens*, 57 F.3d 747, 751 (9th Cir.1995)).  The Court also recognized that "'civilian courts have traditionally deferred to the superior experience of the military in matters of duty orders, promotions, demotions, and retentions.'"  *Id.* (quoting *Knutson v. Wisconsin Air Nat'l Guard*, 995 F.2d 765, 771 (7th Cir. 1993)).

The court finds that analysis of Plaintiff's retaliation and disparate treatment claims relating to his non-selection for promotion and non-retention for enlistment clearly demonstrates the nonjusticiability of those claims.  Therefore, the court will dismiss these claims.

### 2.    Hostile Environment Claims

As to Plaintiff's remaining hostile work environment claims, the court first expresses its doubt that the sparse facts alleged in the amended complaint rise even to the liberal pleading

standard of the Federal Rules of Civil Procedure.  *See Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) ("[T]he pleading standard Rule 8 announces . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).  The Supreme Court has held that to properly state a claim that would survive Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.*  In his complaint, Plaintiff merely alleges that he was "assaulted" and "subjected to severe and pervasive racially charged comments" at some point "during the course of his employment" and that he was denied "similar opportunities for training as his white counter-parts."  However, the complaint identifies no specific names, dates, incidents, locations, or other concrete information from which the court can discern a plausible discrimination or hostile environment claim.

Considering *arguendo* that Plaintiff's alleged facts do somehow meet the *Iqbal*/*Twombly* plausibility standard, the court finds that the same reasoning governing the nonjustibility of Plaintiff's promotion and retention claims would govern the analysis of his hostile environment claim.  Judge Blackburn's analysis of the facts raised in the *Woody III* harassment claim is useful and persuasive.  Woody raised there allegations of "numerous racial remarks" and derogatory racial language by his co-workers, failure of his supervisors to protect him from physical harm, and more severe discipline than similarly situated white co-workers.  Judge Blackburn looked to several analogous cases from other circuits in holding that "the challenged activity is ***clearly incident*** to plaintiff's military service," and therefore, nonjusticiable. *Woody III*,  CV-97-B-1291-S, Doc. 33, at 27 (N.D. Ala. Sept. 29, 2000).  In her analysis, she noted that "the maintenance shop was a military facility, and while performing technician duties, plaintiff, his peers, and

11

supervisors were in military uniform."  Likewise, Woody's claims here, as discernible by the bare allegations of his complaint, result in a similar analysis and the court reaches the conclusion that these claims also stand to be dismissed under the *Feres* intra-military immunity doctrine.

The court's decision is bolstered by policy considerations.  In addition to the policy concerns addressed above regarding military personnel decisions, the Eleventh Circuit has discussed policy concerns regarding interference with military discipline, a category that clearly encompasses on-duty harassment.  *See Speigner*, 248 F.3d at 1296-97.  Some of those concerns, as articulated by other circuits and cited in *Speigner*, include:

- "[C]ourts should not interfere with military discipline and management. These are areas where we have little competence or authority to proceed." *Meister v. Texas Adjutant General's Dep't,* 233 F.3d 332, 338 (5th Cir. 2000).

- "[S]uits for injunctive relief, like those for monetary damages, must be carefully regulated in order to prevent intrusion of the courts into the military structure."  *Crawford v. Texas Army Nat'l Guard*, 794 F.2d 1034, 1036-37 (5th Cir. 1986) (noting an exception to this rule for cases involving "challenges to the facial validity of military regulations" that are distinct from "discrete personnel matters.").

- "[A]llowing service members to sue their superiors would unacceptably compromise military discipline and readiness for combat." *Jones v. New York State Div. of Military & Naval Affairs*, 166 F.3d 45, 52 (2d Cir. 1999).

These policies further confirm the court's holding dismissing the hostile environment claims as nonjusticible.

In the alternative, even if the purported allegations supporting Plaintiff's hostile environment claims did not meet the three-step "incident-to-service" test, the court finds Plaintiff has effectively abandoned these claim because he did not specifically address them in his response brief.  (*See* Doc. 28).  First, Plaintiff's adopted completely the Defendant's statement of facts from its brief opposing the motion to dismiss.  That statement of facts does not describe any

concrete facts or incidents to support a claim of hostile environment.  Thus Plaintiff's blanket

adoption reflects no effort to preserve a claim for hostile environment.  Second, Plaintiff

advances only one argument against the motion to dismiss: the *Feres* doctrine is "inapplicable in

the instant case."  Because the court has soundly rejected this argument, and Plaintiff's brief

offers no alternative, the court finds his hostile environment claims do not survive.  *See Coalition*

*for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir.

2000) ("[F]ailure to brief and argue this issue during the proceedings before the district court is

grounds for finding that the issue has been abandoned.").  Therefore, the court will also dismiss

Plaintiff's hostile environment claims.

## C.    *Treatment of Dual Status Technicians in Other Circuits*

The Eleventh Circuit Court of Appeals has not specifically addressed the treatment of

dual status National Guard military technicians under its three-part "incident to service" test,

though several district courts in the Eleventh Circuit have done so.  *See Woody v. West*, CV-97-

B-1291-S, Doc. 33, at 27 (N.D. Ala. Sept. 29, 2000); *Paulk v. Harvey*, 2006 WL 2786942 (M.D.

Ala. 2007).  Plaintiff and Defendant base their arguments entirely on cases from *other* Circuit

Courts of Appeal that have assessed dual status military technicians, but those cases are

persuasive at best, and the court will briefly address them.

Plaintiff cites only to *Jentoft v. United States*, 450 F.3d 1342 (Fed. Cir. 2006), in its

opposition to Defendant's motion to dismiss.  (*See* Doc. 28).  Relying solely on this out-of-circuit

case, Plaintiff argues that the *Feres* doctrine is "inapplicable in the instant case and cannot be

made the basis for Defendant's motion to dismiss."  (Doc. 28, at 1).  This court disagrees as to

the inapplicability of the *Feres* doctrine to this case, finding its application clear in light of the

13

Eleventh Circuit precedent cited above.

Plaintiff urges this court to apply the reasoning of *Jentoft*, and specifically that court's interpretation of 10 U.S.C. § 10216(a), a statutory provision that defines a dual status military technician as a "Federal civilian employee."  Plaintiff quotes the following portion of *Jentoft*:

> Both the National Guard Technician Act and 10 U.S.C. § 10216(a) set forth provisions that characterize and regulate the dual status National Guard technician position. Of particular interest to this appeal is § 709(b), which states that a dual status technician position is "defined" under § 10216(a). Section 10216(a), in turn, provides that "[f]or purposes of this section and *any other provision of law*, a military technician (dual status) is a Federal civilian employee." (Emphasis added). Notably, there is no language in § 10216(a) limiting the circumstances in which a dual status technician can be considered a federal civilian employee. Thus, the plain language of § 10216(a) makes clear that Jentoft has a justiciable claim under the Equal Pay Act, and that the Claims Court should not have denied her adjudication of that claim on summary judgment. . . .
>
> In our view, given the broad and unambiguous language contained in § 10216(a), Congress articulated its intention that dual status technicians be treated in the same manner as other federal civilian employees, including having rights under the Equal Pay Act.

*Jentoft v. United States*, 450 F.3d 1342, 1348-49 (Fed. Cir. 2006).

This court, however, is not persuaded by Plaintiff's argument that the plain language of Section 10216 alters the reach or applicability of the *Feres* doctrine.  To the contrary, as Defendant illuminates, the Fifth, Sixth, Eighth, and Ninth Circuit Courts of Appeal have explicitly rejected *Jentoft*'s reasoning, holding that the 1997 amendments to 10 U.S.C. § 10216 do *not* alter application of the *Feres* bar as it applies to dual-status national guard technicians. *See Wetherill v. Geren*, 2010 WL 3155192 (8th Cir. Aug. 11, 2010); *Bowers v. Wynne*, 2010 WL 2869517 (6th Cir. July 21, 2010); *Zuress v. Donley*, 606 F.3d 1249 (9th Cir. 2010); *Walch v. Adjutant General's Dep't of Texas*, 533 F.3d 289 (5th Cir. 2008).  The court finds the line of

reasoning in these cases more persuasive than *Jentoft*.  Specifically, this court agrees that Section 10216 did not signal Congress' intent to override or abrogate the *Feres* doctrine for the purposes of a dual status National Guard technician's Title VII claims, as Plaintiff seems to suggest. Instead, the court concurs that the "any other provision of law" language *Jentoft* analyzes is more likely intended to "eliminate inconsistences in the nomenclature" than to "override settled case law on intra-military immunity." *Zuress*, 606 F.3d at 1255.

Plaintiff urges the court to render the intra-military immunity doctrine completely inapplicable to this case because of Plaintiff's dual-status employment.  Not surprisingly, Defendant urges the court to take a markedly different approach.  Defendant's motion asks this court to adopt the approach of the First and Sixth Circuits, which have held that dual status military technician positions are "irreducibly military in nature," thus precluding any Title VII claims under the *Feres* doctrine.  (*See* Doc. 23, at 8, citing *Fisher v. Peters*, 249 F.3d 433 (6th Cir. 2001); *Lestiko v. Stone*, 124 F.3d 817, 820-21 (6th Cir. 1998); *Wright v. Park*, 5 F.3d 586, 588-89 (1st Cir. 1993)).  Defendant explains this approach is one of "two general theories" regarding the applicability of Title VII to dual status National Guard technicians.  The second approach, advanced by the Fifth and Ninth Circuits, holds that a National Guard technician may proceed under Title VII *only if* the conduct "arises purely from the civilian aspects" of the employment, and "the cause of action is not integrally related to the military's unique structure." (Doc. 23, at 8, citing *Brown v. United States*, 227 F.2d 295, 299 (5th Cir. 2000); *Mier v. Owens*, 57 F.3d 747 (9th Cir. 1995)).

The court finds it need not choose between these two approaches, nor affirmatively adopt any of these court's holdings.  Until the Eleventh Circuit has occasion to analyze the *Feres*

15

doctrine in the context of dual-status military employment, this court is limited to analysis under the existing three-factor test, which the Eleventh Circuit has clearly established as the means by which to determine intra-military immunity.  Notwithstanding, the court finds that either of these two approaches supports the court's holding that Plaintiff's claims against the Secretary of the Army relating to non-promotion, non-retention, and hostile work environment are barred by the doctrine of intra-military immunity.

On one hand, the rationale of *Fisher*, *Lestiko*, and *Wright* is persuasive in light of the military aspects of Plaintiff's position, including his mandatory military rank and uniform, which appear to be so intertwined with any civilian aspects of his technician position that the position could be considered "irreducibly military" in nature.  On the other hand, the court finds that the causes of action Plaintiff alleges in this case are "integrally related to the military's unique structure," as contemplated in *Brown* and *Meier*, because they implicate the Army's internal policies, procedures, and operations regarding (a) discipline, such as reporting, code of conduct of its members, and punishment, and (b) personnel evaluation, such as promotion, retention, and termination decisions.  Therefore, the court finds that its earlier conclusion comports with either approach.  Moreover, this court's holding respects the separations of powers principles that remain a core concern of intra-military immunity:

> "[J]udges are not given the task of running the Army. The responsibility for setting up channels through which . . . grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters."

*Chappell v. Wallace*, 462 U.S. 296, 301 (1983) (quoting *Orloff v. Willoughby*, 345 U.S. 83, 93-94

16

(1953)).

**D.     *Waiver and Abandonment of Certain Claims***

  Notwithstanding the above analysis concerning the dispositive applicability of the *Feres*
doctrine to this case, the court also finds that Plaintiff has waived and abandoned certain claims.
In particular, Plaintiff did not respond to Defendant's arguments that the claims alleged under 42
U.S.C. §§ 1981 and 1983 should be dismissed for lack of subject matter jurisdiction.  Defendant
cited to specific binding authorities from the Supreme Court and Eleventh Circuit to articulate
various arguments for dismissal of the claims raised under both statutes, including Plaintiff's
inability to articulate a *prima facie* claim under either against the Secretary of the Army.  (*See*
Mot. to Dismiss, Doc. 23, at 13-15).  The court agrees with Defendant that Plaintiff's failure to
respond to any of these arguments constitutes a waiver and abandonment of those claims.  *See
Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th
Cir. 2000) ("[F]ailure to brief and argue this issue during the proceedings before the district court
is grounds for finding that the issue has been abandoned.").

## V.  CONCLUSION

  For the reasons stated above, the court finds that this case is due to be dismissed because
the doctrine of intra-military immunity bars all of Plaintiff's various employment discrimination
claims against the Army under Section 1981, Section 1983, and Title VII.  In the alternative, even
if Plaintiff's hostile environment and Section 1981 and 1983 discrimination claims (counts one,
two, three, and six) were not barred by intra-military immunity, they stand to be dismissed
because the court finds Plaintiff has waived and abandoned these claims.

  The court will enter a separate Order in accordance with this Memorandum Opinion.

DONE and ORDERED this 16th day of March, 2011.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE